Steven G. Mintz (SM 5428)
MINTZ & GOLD LLP
444 Park Avenue South
New York, New York 10016
(212) 696-4848

Attorneys for Defendants/Counterclaimants/Third-Party Plaintiffs
Trio Industries Management, LLC, Trio Industries Holdings, LLC,
Evan R. Daniels and Robert E. Gyemant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
MERIT CAPITAL GROUP, LLC,                  :

        Plaintiff,                        :     Case No. 04 Civ. 7690 (RCC)

  - against -                              :

TRIO INDUSTRIES MANAGEMENT,                :
LLC, TRIO INDUSTRIES HOLDINGS,             :
LLC, EVAN R. DANIELS, and ROBERT           :     **AMENDED ANSWER,**
E. GYEMANT,                                :     **COUNTERCLAIM, AND**
                                           :     **THIRD PARTY COMPLAINT**
        Defendants.                       :
------------------------------X
TRIO INDUSTRIES MANAGEMENT,                :
LLC and TRIO INDUSTRIES HOLDINGS,          :
LLC,                                       :
                                           :
        Third Party Plaintiffs,           :
                                           :
  - against -                              :
                                           :
HARVEY M. BLOCH, ALFRED                    :
SALAZAR and THOMAS J. MANCUSO,             :
                                           :
        Third Party
        Defendants.                       :
------------------------------X

      Defendants Trio Industries Management, LLC ("Trio Management"), Trio

Industries Holdings, LLC ("Trio Holdings"), Evan R. Daniels ("Daniels") and Robert E.

Gyemant ("Gyemant")(collectively, the "defendants"), by their attorneys Mintz & Gold

LLP, as and for their Amended Answer, Counterclaims and Third-Party Complaint, state as follows:

## AMENDED ANSWER

1.  Deny each and every allegation contained in paragraph 1 of the complaint, except admit that defendants have been conducting the affairs of Trio Holdings and, with regard to the parties' obligations under the various agreements discussed in the complaint, defendants respectfully refer the Court to those agreements.

2.  Deny knowledge or information sufficient to for a belief as to the truth of the allegations contained in paragraph 2 of the complaint regarding plaintiff Merit Capital Group, LLC ("Merit Capital"), and deny that Merit Capital is a secured lender of Trio Management or an owner of Trio Industries.

3.  Admit the allegations contained in paragraph 3 of the complaint.

4.  Admit the allegations contained in paragraph 4 of the complaint.

5.  Admit the allegations contained in paragraph 5 of the complaint.

6.  Admit the allegations contained in paragraph 6 of the complaint.

7.  Admit the allegations contained in paragraph 7 of the complaint.

8.  Deny the allegations contained in paragraph 8 of the complaint.

9.  Deny the allegations contained in paragraph 9 of the complaint, except admit that defendants entered into various agreements with Merit Capital in 2003.

10. Admit that Trio Management and Merit Capital entered into a loan agreement containing the terms described in the allegations contained in paragraph 10 of the complaint, except deny that the loan agreement entitles Merit Capital to the recovery of reasonable attorneys' fees and costs and deny that the loan agreement is enforceable

due to plaintiff's fraudulent inducement, misrepresentations, failure of consideration and bad faith.

11. Deny the allegations set forth in paragraph 11 of the complaint.

12. Admit that the parties' loan agreement was evidenced by a promissory note containing the terms described in the allegations contained in paragraph 12 of the complaint, except deny that the promissory note is enforceable due to plaintiff's fraudulent inducement, misrepresentations, failure of consideration and bad faith.

13. Admit that the parties entered into a pledge agreement containing the terms described in the allegations contained in paragraph 13 of the complaint, except deny that the pledge agreement is enforceable due to plaintiff's fraudulent inducement, misrepresentations, failure of consideration and bad faith.

14. Admit that Trio Holdings, Daniels and Gyemant executed individual guarantees containing the terms described in the allegations contained in paragraph 14 of the complaint, except deny that the individual guarantees are enforceable due to plaintiff's fraudulent inducement, misrepresentations, failure of consideration and bad faith.

15. Admit that Trio Management and Trio Holdings entered into a membership interest purchase agreement with Merit Capital granting Merit an unrestricted 20% ownership interest in Trio Holdings and a restricted 50% ownership interest, and deny the remainder of the allegations contained in paragraph 15 of the complaint and further deny that the membership interest purchase agreement is enforceable due to plaintiff's fraudulent inducement, misrepresentations, failure of consideration and bad faith.

16. Deny the allegations contained in paragraph 16 of the complaint.

17. Deny the allegations contained in paragraph 17 of the complaint.

18. Deny the allegations contained in paragraph 18 of the complaint.

19. Deny the allegations contained in paragraph 19 of the complaint.

20. Deny the allegations contained in paragraph 20 of the complaint.

21. Defendants reallege paragraphs 1 through 20 above as though fully set forth herein.

22. Deny the allegations contained in paragraph 22 of the complaint.

23. Deny the allegations contained in paragraph 23 of the complaint.

24. Defendants reallege paragraphs 1 through 23 above as though fully set forth herein.

25. Deny the allegations contained in paragraph 25 of the complaint.

26. Deny the allegations contained in paragraph 26 of the complaint.

27. Defendants reallege paragraphs 1 through 26 above as though fully set forth herein.

28. Deny the allegations contained in paragraph 28 of the complaint.

29. Deny the allegations contained in paragraph 29 of the complaint.

30. Admit the allegations contained in paragraph 30 of the complaint.

31. Deny the allegations contained in paragraph 31 of the complaint.

32. Deny the allegations contained in paragraph 32 of the complaint.

33. Defendants reallege paragraphs 1 through 32 above as though fully set forth herein.

34. Deny the allegations contained in paragraph 34 of the complaint.

35. Deny the allegations contained in paragraph 35 of the complaint.

36. Deny the allegations contained in paragraph 36 of the complaint.

37. Deny the allegations contained in paragraph 37 of the complaint.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

38. The Complaint fails to state a cause of action.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

39. The documents on which plaintiff bases its claims were procured by fraud, trick and deceit, and therefore void ab initio.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

40. The plaintiff's claims are barred due to the failure of consideration on the part of plaintiff.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

41. The plaintiff's claims are barred by the doctrine of unconscionability.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

42. The plaintiff's claims are barred by the doctrine of unclean hands.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

43. The plaintiff's claims are barred by the doctrine of bad faith.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

44. General principles of equity preclude the Court from granting the relief requested.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

45. The Court lacks personal jurisdiction over defendants Gyemant and Daniels.

## FACTS COMMON TO
## COUNTERCLAIM AND THIRD-PARTY CLAIMS[1]

46.     Counterclaimant and third-party plaintiff Trio Industries Management, LLC ("Trio Management") is a limited liability company duly organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 8411 Preston Road, Suite 850, Dallas, Texas 75225.

47.     Counterclaimant and third-party plaintiff Trio Industries Holdings, LLC ("Trio Holdings") is a limited liability company duly organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 8411 Preston Road, Suite 850, Dallas, Texas 75225.

48.     Trio Management is an owner of Trio Holdings (Trio Management and Trio Holdings are collectively referred to herein as the "Trio Parties"). Trio Holdings is engaged in the research and development of powder coating to use on wood substrates.

49.     Evan R. Daniels ("Daniels") is a citizen of the State of Texas and is the owner of fifty (50%) percent of the outstanding membership interests of Trio Management, as well as a managing member of Trio Management and an officer of Trio Holdings.

50.     Robert E. Gyemant ("Gyemant") is a citizen of the State of Texas and is the owner of fifty (50%) percent of the outstanding membership interests of Trio Management, as well as a managing member of Trio Management and an officer of Trio Holdings.

51.     Upon information and belief, Merit Capital Group, LLC ("Merit") is a limited liability company duly organized and existing under the laws of the State of New

---

[1] Daniels and Gyemant are reserving their right to challenge the Court's personal jurisdiction over them and, accordingly, are not presently asserting counterclaims or third-party claims herein.

6

York, and maintains its principal place of business at 545 Madison Avenue, Suite 1600, New York, New York 10022.

52. Upon information and belief, third-party defendant Harvey Bloch ("Bloch") is a resident of the State of New York with an address at 545 Madison Avenue, Suite 1600, New York, New York 10022.

53. Upon information and belief, third-party defendant Alfred Salazar ("Salazar") is a resident of the State of New York with an address at 545 Madison Avenue, Suite 1600, New York, New York 10022.

54. Upon information and belief, third-party defendant Thomas Mancuso ("Mancuso") is a resident of the State of Colorado with an address at Hahn, Smith, Walsh & Mancuso, P.C., 717 17th Street, Suite 1520, Denver, Colorado 80202.

55. The Court has jurisdiction over the third-party claims pursuant to 28 U.S.C. §1332(a)(1) in that the dispute is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Venue is proper in this District with respect to the third-party claims.

56. During 2002, Trio Holdings was seeking approximately $5,000,000 to $7,000,000 financing to enable it to capitalize on possible opportunities to establish manufacturing and sales facilities in Michigan and Texas.

57. During the course of Trio Holdings' pursuit of financing, the principals of the Trio Parties were introduced to Merit and its principals, Harvey Bloch ("Bloch") and Alfred Salazar ("Salazar").

58. During meetings between the principals of the Trio Parties and Merit, Bloch and Salazar made numerous representations that Merit was highly experienced in

raising capital for companies such as Trio Holdings and that Merit would be able quickly to obtain the financing sought by Trio Holdings.

59. During the course of the discussions between the principals of the Trio Parties and Merit, Bloch and Salazar introduced the defendants to a Denver attorney, Thomas Mancuso ("Mancuso"). Bloch and Salazar represented that Mancuso had a great deal of experience with municipal financing, which the parties contemplated would be a component of the financing being sought by Trio Holdings.

60. At the suggestion of Bloch and Salazar, the Trio Parties' principals engaged in discussions with Mancuso concerning Trio Holdings' financing needs and the possibility of obtaining municipal financing.

61. In addition to the $5,000,000 to $7,000,000 of financing Trio Holdings sought to allow it to pursue new business opportunities, Trio Holdings required interim financing to satisfy its working capital needs until Merit secured the $5,000,000 to $7,000,000 of new financing.

62. Bloch and Salazar represented that, through Merit, they could obtain interim financing for Trio Holdings by raising $1,000,000 from certain investors which Merit had "standing by." This representation was knowingly false at the time it was made.

63. To satisfy Trio Holdings' financing needs, Bloch and Salazar formulated a three step plan. First, Merit would obtain $1,000,000 of interim financing by lending Trio Holdings' parent, Trio Management, funds obtained from Merit's investors (the "Bridge Financing"). Next, at least $6,000,000 of membership interests in Trio Management or Trio Holdings would be sold to additional investors obtained by Merit (and to any

8

investors obtained by Trio Management or Trio Holdings) (the "Equity Financing"). Finally, Merit would arrange for Trio Management or Trio Holdings to be merged with a public shell company which Bloch and Salazar would procure, and Merit would then sell the stock of the public company.

64. In reliance upon Bloch and Salazar's representations and assurances, the Trio Parties agreed to the Bridge Financing and Equity Financing and indicated they needed to better understand the third step, the public shell company transaction, before they would agree to it.

65. To facilitate the $1,000,000 Bridge Financing, Bloch and Salazar caused Mancuso to draft the necessary documents to reflect the terms dictated by them. Bloch and Salazar also caused Merit to paid for Mancuso to represent both Trio Parties, Gyemant and Daniels, but, in fact, Mancuso may have represented both sides of the transaction without disclosing this critical information to Gyemant and Daniels.

66. In May of 2003, Mancuso provided the Trio Parties with a package of Bridge Financing transaction documents consisting of a Loan Agreement, Pledge Agreement, Guarantees from Trio Holdings, Gyemant and Daniels, and a Membership Interest Purchase Agreement, all of which reflected terms provided by Bloch and Salazar to Mancuso.

67. The principals of Merit and the Trio Parties did not engage in any substantive negotiations regarding the terms of the Bridge Financing transaction documents, and the legal ramifications of those documents were never explained to the principals of the Trio Parties by Mancuso, Bloch or Salazar.

68. To induce the Trio Parties, Gyemant and Daniels to execute the Bridge Financing transaction documents, Bloch, Salazar and Mancuso represented that the Bridge Financing was a "simple and routine" transaction, and Bloch and Salazar represented that Merit had investors "standing by" to provide the necessary funding.

69. The Bridge Financing transaction documents provided for Merit to loan Trio Management up to $1,000,000 of funds obtained by Merit from its investors (the "Merit Loan"), and for such loan to be secured by a pledge of Trio Management's interest in Trio Holdings and by the guarantees of Trio Holdings, Gyemant and Daniels. In addition, the Bridge Financing transaction documents provided for Merit to receive a fee of $110,000 and a 20% interest in Trio Holdings for bringing its investors to Trio Management[2].

70. Despite the fact that the Bridge Financing transaction documents provide for Merit to receive a $110,000 fee and an equity interest in Trio Holdings, Merit had absolutely no obligations pursuant to the one-sided Bridge Financing transaction documents.

71. To further induce the Trio Parties, Gyemant and Daniels to execute the Bridge Financing transaction documents, Bloch and Salazar represented that they would cause the majority, if not all, of the interim investors to convert their debt to equity interests as part of the Equity Financing. Thus, Bloch, Salazar and Mancuso assured the Trio Parties that, as a result of such debt to equity conversion, Trio Management would not be required actually to repay a substantial part, or any, of the Merit Loan and that sufficient funds would be available for any amount that was required to be repaid.

---

[2] The Bridge Financing transaction documents also provide for Merit to receive a 50% interest in Trio Holdings, but grant Trio Management the right to vote that interest and to repurchase it for nominal consideration if the Merit Loan is repaid and the Equity Financing fails to occur.

72. In reliance upon the representations and assurances made by Bloch, Salazar and Mancuso, the Trio Parties, Gyemant and Daniels executed the Bridge Financing transaction documents in June of 2003.

73. Following the execution of the Bridge Financing transaction documents, Bloch and Salazar caused one of Merit's investors to invest $83,333.33 for use by Merit in making the Merit Loan. Thereafter, Bloch, Salazar and Merit failed to use any efforts whatsoever to obtain additional investors or addition funds in connection with the Merit Loan.

74. As a result of Bloch and Salazar's failure to honor their agreement to obtain investors to fund the Merit Loan, the Trio Parties lacked the capital needed to meet their working capital needs.

75. In light of Merit's failure to complete the Bridge Financing, the Trio Parties, with no assistance from Bloch, Salazar or Mancuso, were compelled to solicit investments from their principals, existing investors and others to enable the Trio Parties to meet their working capital needs.

76. During the fall of 2003, the Trio Parties obtained commitments from their principals, existing investors and others to invest a total of $545,720.81.

77. In reliance upon the advice of Mancuso and representations that the Merit Loan mechanism provided protections to the investors, the Trio Parties caused their principals, existing investors and other investors to invest their $545,720.81 through the Merit Loan mechanism pursuant to the Bridge Financing transaction documents.

78. By virtue of having made their investment through the Merit Loan mechanism pursuant to the Bridge Financing transaction documents, Merit is now

claiming that the $545,720.81 is deemed to have been loaned to Trio Management by Merit when, in fact, Merit neither raised the monies nor made the loan.

79. As a result of the foregoing, Merit has asserted claims that it is owed the sum of $739,054.14 (representing the $545,720.81 invested by the Trio Parties' investors, the $83,333.33 invested by Merit's investor and Merit's fee of $110,000 for bringing investors into the Bridge Financing transaction), and is attempting to seize control of Trio Holdings pursuant to the terms of the Bridge Financing transaction documents.

80. The commercially unreasonable nature of the Bridge Financing transaction and the extremely one-sided nature of the Bridge Financing transaction documents demonstrate that they were designed not for the purposes of providing financing for the Trio Parties, but rather as part of a plot to draw the Trio Parties into some type of stock scheme (the "shell" company transaction) and, if that failed, to allow Merit to gain control over Trio Holdings for no consideration.

81. Due to Merit's failure to obtain financing for the Trio Parties, the Trio Parties were compelled to seek financing elsewhere and to incur substantial legal, accounting and other fees and expenses in connection therewith.

## AS AND FOR A FIRST COUNTERCLAIM
(Against Merit for Fraud)

82. Counterclaimants Trio Management and Trio Holdings repeat and reallege paragraphs 46 through 81 above as though fully set forth herein.

83. Merit's representations and assurances (which were made by its principals, Bloch and Salazar) regarding its ability to procure financing for the Trio Parties were false when made.

84. The Trio Parties detrimentally relied upon Merit's representations and assurances regarding its ability to procure financing for the Trio Parties.

85. The Bridge Financing transaction and the documents relating thereto were designed to draw the Trio Parties into a stock scheme and, if that failed, to allow Merit to gain control over Trio Holdings for no consideration.

86. Merit's fraudulent conduct caused damages to the Trio Parties in an amount to be determined at trial.

### AS AND FOR A SECOND COUNTERCLAIM
(Against Merit for Fraudulent Inducement)

87. Counterclaimants Trio Management and Trio Holdings repeat and reallege paragraphs 46 through 86 above as though fully set forth herein.

88. Through the acts, statements and omissions set forth above, including Merit's representations and assurances regarding its ability to procure financing for the Trio Parties, Merit fraudulently induced the Trio Parties to enter into the Bridge Financing transaction and to execute the Bridge Financing transaction documents.

89. The Trio Parties actually and reasonably relied upon Merit's fraudulent acts, statements and omissions, and but for Merit's fraudulent acts, statements and omissions, would not have entered into the Bridge Financing transaction or executed the Bridge Financing transaction documents.

90. Merit failed to provide any consideration for the benefits conferred upon it by the Bridge Financing transaction documents.

91. Merit's fraudulent conduct entitles the Trio Parties to rescission *ab initio* of the Bridge Financing transaction, and to recover all additional, incidental or

consequential damages sustained by the Trio Parties as a result of Merit's misconduct. The Trio Parties have no adequate remedy at law.

92.     As a result of the Trio Parties' reliance upon Merit's representations and assurances regarding its ability to procure financing for the Trio Parties, the Trio Parties have suffered damages.

### AS AND FOR A THIRD COUNTERCLAIM
(Against Merit for Breach of Contract)

93.     Counterclaimants Trio Management and Trio Holdings repeat and reallege paragraphs 46 through 89 above as though fully set forth herein.

94.     The acts and omissions of Merit as set forth above constitute material breaches of the agreements made between Merit and the Trio Parties.

95.     Merit's breaches of the agreements made between Merit and the Trio Parties caused damages to the Trio Parties in an amount to be determined at trial.

### AS AND FOR A FOURTH COUNTERCLAIM
(Against Merit for Unjust Enrichment)

96.     Counterclaimants Trio Management and Trio Holdings repeat and reallege paragraphs 46 through 93 above as though fully set forth herein.

97.     Through the acts, statements and omissions set forth above, Merit fraudulently induced the Trio Parties to enter into the Bridge Financing transaction and to execute the Bridge Financing transaction documents.

98.     By this conduct, Merit has been unjustly enriched in an amount equal to the $110,000 fee and the value of the equity interest in Trio Holdings which were provided to Merit pursuant to the Bridge Financing transaction documents.

### AS AND FOR A FIRST THIRD PARTY CLAIM
(Against Bloch, Salazar and Mancuso for Fraud)

99. Third-party plaintiffs Trio Management and Trio Holdings repeat and reallege paragraphs 46 through 96 above as though fully set forth herein.

100. The representations and assurances of Bloch, Salazar and Mancuso as set forth above, including the representations and assurances made regarding Bloch and Salazar's ability to procure financing for the Trio Parties and the effect of the Bridge Financing transaction documents, were false when made.

101. The Trio Parties detrimentally relied upon The representations and assurances of Bloch, Salazar and Mancuso as set forth above.

102. The Bridge Financing transaction and the documents relating thereto were designed to draw the Trio Parties into a stock scheme and, if that failed, to allow Merit to gain control over Trio Holdings for no consideration.

103. The fraudulent conduct of Bloch, Salazar and Mancuso caused damages to the Trio Parties in an amount to be determined at trial.

104. To the extent that the Trio Parties may be held liable for any of the damages allegedly sustained by plaintiff, the Trio Parties are entitled to indemnity or contribution from Bloch, Salazar and Mancuso in an amount and proportion reflecting the relative fault of the parties.

### AS AND FOR A SECOND THIRD PARTY CLAIM
(Against Bloch, Salazar and Mancuso for Fraudulent Inducement)

105. Third-party plaintiffs Trio Management and Trio Holdings repeat and reallege paragraphs 46 through 104 above as though fully set forth herein.

106. Through the acts, statements and omissions set forth above, Bloch, Salazar and Mancuso fraudulently induced the Trio Parties to enter into the Bridge Financing transaction and to execute the Bridge Financing transaction documents.

107. The Trio Parties actually and reasonably relied upon the fraudulent acts, statements and omissions of Bloch, Salazar and Mancuso, and but for Bloch, Salazar and Mancuso's fraudulent acts, statements and omissions, would not have entered into the Bridge Financing transaction or executed the Bridge Financing transaction documents.

108. The fraudulent conduct of Bloch, Salazar and Mancuso entitles the Trio Parties to rescission *ab initio* of the Bridge Financing transaction, and to recover all additional, incidental or consequential damages sustained by the Trio Parties as a result of Merit's misconduct. The Trio Parties have no adequate remedy at law.

109. To the extent that the Trio Parties may be held liable for any of the damages allegedly sustained by plaintiff, the Trio Parties are entitled to indemnity or contribution from Bloch, Salazar and Mancuso in an amount and proportion reflecting the relative fault of the parties.

### AS AND FOR A THIRD THIRD PARTY CLAIM
(Against Bloch, Salazar and Mancuso for Breach of Contract)

110. Third-party plaintiffs Trio Management and Trio Holdings repeat and reallege paragraphs 46 through 109 above as though fully set forth herein.

111. The acts and omissions of Bloch and Salazar as set forth above constitute material breaches of the agreements made between the Trio Parties, Bloch and Salazar, including their agreement to solicit and obtain investors to invest funds to be used in connection with the Merit Loan and Bridge Financing.

112. The acts and omissions of Mancuso as set forth above constitute material breaches of the agreements made between the Trio Parties and Mancuso, including Mancuso's agreement to provide legal counsel and advice to the Trio Parties.

113. Bloch, Salazar and Mancuso's breaches of their agreements with the Trio Parties caused damages to the Trio Parties in an amount to be determined at trial.

114. To the extent that the Trio Parties may be held liable for any of the damages allegedly sustained by plaintiff, the Trio Parties are entitled to indemnity or contribution from Bloch, Salazar and Mancuso in an amount and proportion reflecting the relative fault of the parties.

### AS AND FOR A FOURTH THIRD PARTY CLAIM
(Against Mancuso for Malpractice)

115. Third-party plaintiffs Trio Management and Trio Holdings repeat and reallege paragraphs 46 through 114 above as though fully set forth herein.

116. Mancuso purported to represent the Trio Parties in connection with the Bridge Financing transaction.

117. During the course of his so-called representation of the Trio Parties, Mancuso was actually representing the interests of Merit, Bloch and Salazar instead of, or in addition to, the interests of the Trio Parties.

118. A conflict of interest existed between Mancuso's purported representation of the Trio Parties and his undisclosed representation of Merit, Bloch and Salazar.

119. Mancuso's failure to disclose such conflict of interest to the Trio Parties violated Mancuso's professional and ethical obligations to the Trio Parties.

120. Mancuso failed to provide the Trio Parties with meaningful legal advice or counsel and, to the extent that Mancuso purported to provide the Trio Parties with legal

advice and counsel, such advice and counsel was incorrect and misleading.

121. To the extent that Mancuso provided the Trio Parties with legal advice and counsel, he did so negligently.

122. Mancuso's actions in connection with his purported representation of the Trio Parties constitutes legal malpractice.

123. As a result of Mancuso's malpractice, Mancuso caused damages to the Trio Parties in an amount to be determined at trial.

WHEREFORE, defendants respectfully demand judgment as follows:

A. Dismissing the Complaint in its entirety;

B. On the First Counterclaim, awarding the Trio Parties damages against Merit in an amount to be proven at trial;

C. On the Second Counterclaim, rescinding the Bridge Financing transaction and the documents relating thereto, and awarding the Trio Parties damages against Merit in an amount to be proven at trial;

D. On the Third Counterclaim, awarding the Trio Parties damages against Merit in an amount to be proven at trial;

E. On the Fourth Counterclaim, awarding the Trio Parties damages against Merit in an amount to be proven at trial;

F. On the First Third-Party Claim, awarding the Trio Parties damages against Bloch, Salazar and Mancuso in an amount to be proven at trial, and an order entitling the Trio Parties to indemnity or contribution from Bloch, Salazar and Mancuso in an amount and proportion reflecting the relative fault of the parties;

G. On the Second Third-Party Claim, rescinding the Bridge Financing transaction and the documents relating thereto, awarding the Trio Parties damages against Bloch, Salazar and Mancuso in an amount to be proven at trial, and an order entitling the Trio Parties to indemnity or contribution from Bloch, Salazar and Mancuso in an amount and proportion reflecting the relative fault of the parties;

H. On the Third Third-Party Claim, awarding the Trio Parties damages against Bloch, Salazar and Mancuso in an amount to be proven at trial, and an order entitling the Trio Parties to indemnity or contribution from Bloch, Salazar and Mancuso in an amount and proportion reflecting the relative fault of the parties;

I. On the Fourth Third-Party Claim, awarding the Trio Parties damages against Mancuso in an amount to be proven at trial; and

J. On all Claims, such other and further relief as to the Court appears just and proper, including the costs and disbursements of this action, including a reasonable attorney's fee.

Dated: New York, New York
       November 5, 2004

MINTZ & GOLD LLP

By: _____
    Steven G. Mintz (SM 5428)
    444 Park Avenue South
    New York, New York 10016
    (212) 696-4848