Steven G. Mintz (SM 5428)
MINTZ & GOLD LLP
444 Park Avenue South
New York, New York 10016
(212) 696-4848

Attorneys for Defendants/Counterclaimants/Third-Party Plaintiffs
Trio Industries Management, LLC, Trio Industries Holdings, LLC,
Evan R. Daniels and Robert E. Gyemant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
MERIT CAPITAL GROUP, LLC,                     :
                                              : **AFFIDAVIT OF**
                    Plaintiff,                : **STEVEN G. MINTZ**
                                              : **IN OPPOSITION TO**
         -against-                            : **MOTION FOR**
                                              : **PRELIMINARY**
                                              : **INJUNCTION**
TRIO INDUSTRIES MANAGEMENT, LLC,              :
TRIO INDUSTRIES HOLDINGS, LLC,                : Case No. 04 Civ. 7690
EVAN R. DANIELS, and ROBERT E. GYEMANT,       : (RCC)
                                              :
                    Defendants.               :
---------------------------------------------------------------x

STATE OF NEW YORK        )
                         : ss.:
COUNTY OF NEW YORK       )

STEVEN G. MINTZ, being duly sworn, deposes and states:

1. I am a member of the firm of Mintz & Gold LLP, counsel to Trio Industries Management, LLC ("Trio Management"), Trio Industries Holdings, LLC ("Trio Holdings"), Evan R. Daniels ("Daniels") and Robert E. Gyemant ("Gyemant") (collectively, "defendants"), in this action. I submit this affidavit in opposition to the plaintiff's, Merit Capital Group, LLC ("Merit"), motion for a

preliminary injunction enjoining the defendants and all individuals and entities acting on their behalf from (i) transferring, conveying, selling, assigning, encumbering, hypothecating, dissipating and/or impairing the value of any membership interest in Trio Holdings and any assets or property belonging to or held for the benefit of Trio Holdings pending final adjudication of this action; and (ii) taking or carrying out any actions on behalf of Trio Holdings.

2.  The accompanying Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction establishes that Merit's motion must be denied because Merit has not made even a token showing of the "irreparable harm" required for preliminary injunctive relief and, in fact, it is apparent even from Merit's complaint that there is no potential "harm" in this case that is not compensable with money damages. Moreover, the lack of a predicate for exercising in personam jurisdiction in New York over Gyemant and Daniels also negates Merit's "likelihood of succeeding" on the merits against those defendants. Finally, the "equities" in this case tilt decisively against the provisional relief Merit seeks.

3.  Although Merit attempts to present this case as one involving a simple default under a typical arms' length commercial loan arrangement, a brief review of the loan documents and the facts set forth in the accompanying affidavit of Evan R. Daniels reveal a different reality. In fact, the loan documents, which were drafted by an attorney who was brought to the deal and paid by Merit, are so one-sided that they provide absolutely no protection to the defendants and make

no economic sense from the defendants' perspective. Moreover, the defendants were fraudulently induced to enter into the loan documents through a series of misrepresentations and false assurances which were made by Merit's principals and Thomas Mancuso ("Mancuso"), the attorney who, unbeknownst to the defendants, may have been unethically acting in concert with Merit's principals. See Affidavit of Evan R. Daniels, dated November 5, 2004 ("Daniels Affidavit"). Thus, far from being a typical, arms' length commercial loan transaction, the transaction at issue was nothing more than a fraudulent scheme to get Trio Holdings and Trio Management involved in some type of stock scheme or, if that failed, to defraud Gyemant and Daniels out of control of their company by obtaining the company at virtually no cost to the plaintiff. See Daniels Affidavit, ¶ 22.

    4.    Essentially, the transaction between Merit and the defendants was structured such that Merit would solicit funds from investors (who were referred to in the transaction as "participants") which would be deposited into an escrow account maintained by Mancuso. The funds would then be disbursed from the escrow account to Trio Management. Thus, Merit acted as a "middleman" which contributed no funds to the transaction, but rather merely served as a conduit for the funds of others. For obtaining participants to fund the transaction, Merit was to receive a fee of $110,000 and a 20% interest in Trio Holdings. Id., ¶ 12.

5. The documents which set forth the terms of the transaction were a loan agreement, a promissory note, a pledge agreement, guarantees and a membership interest purchase agreement.

6. The loan agreement provided that Merit was to "lend" Trio Management up to $1 million from an escrow account maintained by Mancuso, *but only to the extent that funds were obtained from third-party investors and deposited in the account.* The loan agreement further provided that any funds drawn from the escrow account would be deemed to be loans made by *Merit* to Trio Management -- regardless of the source of the funds -- and would have to be repaid pursuant to the promissory note in Merit's favor to evidence the Merit "loan." Under the terms of the loan agreement, a failure by Trio Management to pay interest and principal when due would result in a default, giving Merit the right to pursue all remedies including the appointment of a receiver.

7. The promissory note itself initially referred to an acknowledged principal amount of $210,000 as of June 13, 2003 (the execution date), representing Merit's $110,000 fee and $100,000 that Daniels had contributed as a "participant." Id., ¶ 13. Any additional funds that were deposited into the escrow account and disbursed to Trio Management were to increase the principal amount of the promissory loan up to a maximum principal amount of $1,000,000.

8. The membership interest purchase agreement among Merit, Trio Management and Trio Holdings was the document pursuant to which Merit acquired the equity portion of its fee (i.e. a 20% unrestricted interest in Trio

Holdings), and provided for Merit to receive that interest and an additional 50% restricted interest in Trio Holdings for consideration of $10.00. Both interests entitled Merit to an allocation of a corresponding percentage of the net profits, net losses and other distributions of Trio Holdings.

9. The accompanying pledge agreement provided for Trio Management to pledge to Merit its remaining 30% interest in Trio Holdings as security for repayment of the amounts due pursuant to the promissory note. The pledge agreement also gave Merit the right to exercise all of the available remedies of a secured party, including the right to foreclose on Trio Management's remaining 30% interest in Trio Holdings, in the event of a default under the promissory note.

10. In addition to the other agreements, Trio Holdings, Daniels and Gyemant each guaranteed Trio Management's "indebtedness" to Merit pursuant to separate guarantees.

11. In sum, although Merit's principals had induced defendants to sign the various agreements by representing that they could -- and would -- raise working capital for Trio Holdings, the agreements themselves did not impose any substantive obligations on Merit other than to act as a conduit for funds contributed by *any source*. Even money that was received from Trio Management's principals themselves was to be placed in the Mancuso escrow account and doled out to Trio Management in the form of a "loan" from Merit.

12. Furthermore, under the participation agreements which provided the mechanism for third-party investors to make their investments and fund the

escrow account, a "participant" was to deposit its money in the Mancuso escrow account with the understanding that it would be repaid with interest only when Merit received payment under the promissory note. Thus, Merit had no obligations to "participants," and the "participants" were wholly unsecured. On the other hand, Merit, which had absolutely no capital at risk, stood to gain ownership and control of Trio Holdings if the amount supposedly due under the promissory note (which included Merit's $110,000 fee) was not repaid.

13. As a result of the defendants having executed the foregoing loan documents and Merit's failure actually to procure funds, Merit was somehow in a position to force the defendants to avoid a default by agreeing to participate in a stock scheme for the benefit of Merit and its principals and, if that failed, to simply wrest control of Trio Holdings from Daniels and Gyemant for no consideration (as Merit is now attempting to do through this preliminary injunction).

14. The one-sided and fraudulent nature of the documents relating to this transaction is evident in that such documents purport to give Merit the right to obtain control over Trio Holdings despite the fact that Merit never had to risk its own capital and only procured one investment of $83,333.33, while the defendants themselves procured investments of $545,720.81 (including $170,720.81 from Daniels and Gyemant). Id., ¶ 13.

15. Moreover, since the defendants have offered to repay Merit's one investor, it is clear that this action represents nothing more than an improper

attempt by Merit to seize control over Trio Holdings based upon the *defendants' failure to repay themselves*. To allow Merit to do so would be an incredible injustice and reward Merit's unscrupulous actions.

16. For the reasons set forth herein, in the Daniels Affidavit and the accompanying Memorandum of Law, Merit's motion for a preliminary injunction should be denied in its entirety.

_____
Steven G. Mintz

Sworn to before me this
10th day of November, 2004:

_____
Notary Public

STEVEN A. SAMIDE
Notary Public, State of New York
No. 02SA6032787
Qualified in Nassau County
Commission Expires Nov. 8, 2005