SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------ x
MERIT CAPITAL GROUP, LLC,                                          :
                                                                        Index No. 04 CV 7690(RCC)
        Plaintiff,                                               :

    -against-                                                    :   SECOND AMENDED
                                                                        ANSWER, COUNTERCLAIMS
TRIO INDUSTRIES MANAGEMENT, LLC, TRIO        :   <u>AND THIRD PARTY CLAIMS</u>
INDUSTRIES HOLDINGS, LLC, EVAN R. DANIELS
and ROBERT E. GYEMANT,                                       :

        Defendants.                                            :
------------------------------------------------------------------
TRIO INDUSTRIES MANAGEMENT, LLC, TRIO        :
INDUSTRIES HOLDINGS, LLC and ROBERT E.
GYEMANT,                                                                  :

        Third Party Plaintiffs,                               :

    -against-                                                    :

HARVEY M. BLOCH and ALFRED SALAZAR,    :

        Third Party Defendants.                         :
------------------------------------------------------------------ x

      Defendants Trio Industries Management, LLC ("Trio Management"), Trio Industries Holdings, LLC ("Trio Holdings") and Robert E. Gyemant ("Gyemant"), by their counsel Frydman LLC, for their Second Amended Answer to the Complaint, Counterclaims and Third Party Claims state, as follows:

      1.    Deny the allegation contained in paragraph 1 of the Complaint.

      2.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint regarding plaintiff Merit Capital Group, LLC ("Merit" or "Merit Capital"), and deny that Merit Capital is a secured lender of Trio Management or an owner of Trio Holdings.

3. Deny the allegations contained in paragraph 3 of the Complaint.

4. Deny the allegations contained in paragraph 4 of the Complaint.

5. Deny knowledge and information concerning the citizenship of defendant Evan R. Daniels and deny the balance of the allegations contained in paragraph 5 of the Complaint.

6. Admit the allegations contained in paragraph 6 of the Complaint.

7. Admit the allegations contained in paragraph 7 of the Complaint.

8. Deny the allegations contained in paragraph 8 of the Complaint.

9. Deny the allegations contained in paragraph 9 of the Complaint, except admit that defendants entered into various agreements with Merit Capital in 2003.

10. Deny the allegations of paragraph 10 of the Complaint and refer the Court to the referenced documents for their terms.

11. Deny the allegations contained in paragraph 11 of the Complaint.

12. Deny the allegations contained in paragraph 12 of the Complaint and refer the Court to the referenced documents for their terms.

13. Deny the allegations of paragraph 13 of the Complaint and refer the Court to the referenced documents for their terms.

14. Deny the allegations of paragraph 14 of the Complaint and refer the Court to the referenced documents for their terms.

15. Deny the allegations of paragraph 15 of the Complaint and refer the Court to the referenced documents for their terms.

16. Deny the allegations contained in paragraph 16 of the Complaint.

17. Deny the allegations contained in paragraph 17 of the Complaint.

18. Deny the allegations contained in paragraph 18 of the Complaint.

19. Deny the allegations contained in paragraph 19 of the Complaint.

20. Deny the allegations contained in paragraph 20 of the Complaint.

21. Reallege paragraphs 1 through 20 above as though fully set forth herein.

22. Deny the allegations contained in paragraph 22 of the Complaint.

23. Deny the allegations contained in paragraph 23 of the Complaint.

24. Reallege paragraphs 1 through 23 above as though fully set forth herein.

25. Deny the allegations contained in paragraph 25 of the Complaint.

26. Deny the allegations contained in paragraph 26 of the Complaint.

27. Defendants reallege paragraphs 1 through 26 above as though fully set forth herein.

28. Deny the allegations contained in paragraph 28 of the Complaint.

29. Deny the allegations contained in paragraph 29 of the Complaint.

30. Admit the allegations contained in paragraph 30 of the Complaint.

31. Deny the allegations contained in paragraph 31 of the Complaint.

32. Deny the allegations contained in paragraph 32 of the Complaint

33. Reallege paragraphs 1 through 32 above as though fully set forth herein.

34. Deny the allegations contained in paragraph 34 of the Complaint.

35. Deny the allegations contained in paragraph 35 of the Complaint.

36. Deny the allegations contained in paragraph 36 of the Complaint.

37. Deny the allegations contained in paragraph 37 of the Complaint.

<u>AS AND FOR A FIRST AFFIRMATIVE DEFENSE</u>

38. The Complaint fails to state a cause of action.

AS AND FOR A SECOND AFFIRMATIVE DEFENSE

39.     The documents on which plaintiff bases its claims were procured by fraud, trick and deceit, and therefore void ab initio.

AS AND FOR A THIRD AFFIRMATIVE DEFENSE

40.     The plaintiff's claims are barred due to the failure of consideration on the part of plaintiff.

AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

41.     The plaintiffs claims are barred by the doctrine of unconscionability.

AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

42.     The plaintiff's claims are barred by the doctrine of unclean hands.

AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

43.     The plaintiffs claims are barred by the doctrine of bad faith.

AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

44.     General principles of equity preclude the Court from granting the relief requested.

AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

45.     The Court lacks personal jurisdiction over defendants Gyemant.

FACTS COMMON TO COUNTERCLAIMS, OFFSETS AND THIRD-PARTY CLAIMS

46.     Counterclaimant and third-party plaintiff Trio Management is a limited liability company duly organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 6750 Hillcrest Plaza Drive, No. 313, Dallas, TX 75230.

47. Counterclaimant and third-party plaintiff Trio Holdings is a limited liability company duly organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 6750 Hillcrest Plaza Drive, No. 313, Dallas, TX 75230.

48. Trio Management is an owner of Trio Holdings (Trio Management and Trio Holdings are collectively referred to herein as the "Trio Parties").

49. Counterclaimant and third-party plaintiff Gyemant is a citizen of the State of Texas and is a managing member of Trio Management and an officer of Trio Holdings.

50. Upon information and belief, Merit is a limited liability company duly organized and existing under the laws of the State of New York, and maintains its principal place of business at 545 Madison Avenue, Suite 1600, New York, New York 10022.

51. Upon information and belief, third-party defendant Harvey Bloch ("Bloch") is a resident of the State of New York with an address at 545 Madison Avenue, Suite 1600, New York, New York 10422.

52. Upon information and belief, third-party defendant Alfred Salazar ("Salazar") is a resident of the State of New York with an address at 545 Madison Avenue, Suite 1600, New York, New York 10422.

53. The Court has jurisdiction over the third-party claims pursuant to 28 U.S.C. § 1332(a)(1) in that the dispute is between citizens of different states and the controversy exceeds $75,000, exclusive of interest and costs. Venue is proper in this District with respect to the third-party claims.

54. During 2002, Trio Holdings was seeking approximately $5,000,000 to $7,000,000 of financing to enable it to capitalize on possible opportunities to establish manufacturing and sales facilities in Michigan and Texas.

55. During the course of Trio Holdings' pursuit of financing, the principals of the Trio Parties were introduced to Merit and its principals, (collectively, the "Counterclaim Defendants").

56. During meetings between the principals of the Trio Parties and Merit, Bloch and Salazar made numerous representations that Merit was highly experienced in raising capital for companies such as Trio Holdings and that Merit would be able quickly to obtain the financing sought by Trio Holdings.

57. In addition to the $5,000,000 to $7,000,000 of financing Trio Holdings sought to allow it to pursue new business opportunities, Trio Holdings required interim financing to satisfy its working capital needs until Merit secured the $5,000,000 to $7,000,000 of new financing.

58. Bloch and Salazar represented that, through Merit, they could obtain interim financing for Trio Holdings by raising $1,000,000 from certain investors which Merit had "standing by." This representation was knowingly false at the time is was made.

59. To satisfy Trio Holdings' financing needs, Bloch and Salazar formulated a three step plan. First, Merit would obtain $1,000,000 of interim financing by lending Trio Holdings' parent, Trio Management, funds obtained from Merit's investors (the "Bridge Financing"). Next, at least $6,000,000 of membership interests in Trio Management or Trio Holdings would be sold to additional investors obtained by Merit (and to any

6

investors obtained by Trio Management or Trio Holdings) (the "Equity Financing"). Finally, Merit would arrange for Trio Management or Trio Holdings to be merged with a public shell company which Bloch and Salazar would procure, and Merit would then sell the stock of the public company.

60. Merit, Bloch and Salazar intentionally failed to advise the Trio Parties and Gyemant that Bloch had previously received a felony conviction for an investment fraud for his role in defrauding investors of a prior financial advisory firm with which he was associated. This fact was material in that had the Trio Defendants' known the truth, they would not have done business with Merit.

61. In reliance upon Bloch and Salazar's representations and assurances, the Trio Parties agreed to hire Merit as its financial advisor and agreed to the Bridge Financing and Equity Financing. The Trio Parties indicated they needed to better understand the third step, the public shell company transaction, before they would agree to it.

62. In May of 2003, Bloch and Salazar, on behalf of Merit, commissioned the preparation of Bridge Financing documents that did not benefit the Trio Parties, while unfairly benefiting Merit.

63. The Principals of Merit and the Trio Parties did not engage in any substantive negotiations regarding the terms of the Bridge Financing transaction documents, while Merit continued to promise that it was dutifully acting in good faith as the Trio Parties' financial advisor and fund raiser.

64. To induce the Trio Parties, Gyemant and Daniels to execute the Bridge Financing transaction documents, Bloch and Salazar falsely represented that the Bridge

Financing was a "simple and routine" transaction, and Bloch and Salazar represented that Merit had investors "standing by" to provide the necessary funding.

65. The Bridge Financing transaction documents provided for Merit to loan Trio Management up to $1,000,000 of funds obtained by Merit from its investors (the "Merit Loan"), and for such loan to be secured by a pledge of Trio Management's interest in Trio Holdings and by the guarantees of Trio Holdings, Gyemant and Daniels. In addition, the Bridge Financing transaction documents provided for Merit to receive a fee of $110,000 and a 20% interest in Trio Holdings for bringing its investors to Trio Management.

66. To further induce the Trio Parties, Gyemant and Daniels to execute the Bridge Financing transaction documents, Bloch and Salazar represented that they would cause the majority, if not all, of the interim investors to convert their debt to equity interests as part of the Equity Financing. Thus, Bloch and Salazar assured the Trio Parties that, as a result of such debt to equity conversion, Trio Management would not be required actually to repay a substantial part, or any, of the Merit Loan and that sufficient funds would be available for any amount that was required to be repaid.

67. In reliance upon the representations and assurances made by Bloch and Salazar, the Trio Parties, Gyemant and Daniels executed the Bridge Financing transaction documents in June of 2003.

68. Following the execution of the Bridge Financing transaction documents, Bloch and Salazar caused one of Merit's investors to invest $83,333.33 for use by Merit in making the Merit Loan. Thereafter, Bloch, Salazar and Merit failed to use any efforts

whatsoever to obtain additional investors or addition funds in connection with the Merit Loan.

69. As a result of Merit's, Bloch's and Salazar's failure to honor their agreement to obtain investors to fund the Merit Loan, the Trio Parties lacked the capital needed to meet their working capital needs.

70. In light of Merit's failure to complete the Bridge Financing, the Trio Parties, with no assistance from Bloch, Salazar or Mancuso, were compelled to solicit investments from their principals, existing investors and others to enable the Trio Parties to meet their working capital needs.

71. During the fall of 2003, the Trio Parties obtained commitments from their principals, existing investors and others to invest a total of $545,720.81.

72. By virtue of having utilized the Merit Loan mechanism pursuant to Merit's advice and the Bridge Financing transaction documents, Merit is now claiming that the $545,720.81 is deemed to have been loaned to Trio Management by Merit when, in fact, Merit neither raised the monies nor made the loan.

73. As a result of the foregoing, Merit has asserted claims that it is owed the sum of $739,054.14 (representing the $545,720.81 invested by the Trio Parties' investors, the $83,333.33 invested by Merit's investor and Merit's fee of $110,000 for bringing investors into the Bridge Financing transaction), and is attempting to seize control of Trio Holdings pursuant to the terms of the Bridge Financing transaction documents.

74. The commercially unreasonable nature of the Bridge Financing transaction and the extremely one-sided nature of the Bridge Financing transaction

documents demonstrate that they were designed by the Counterclaim Defendants not for the purposes of providing financing for the Trio Parties, but rather as part of a plot to draw the Trio Parties into some type of stock scheme (the "shell" company transaction) and, if that failed, to allow Merit to gain control over Trio Holdings for no consideration.

75. Due to Merit's failure to obtain financing for the Trio Parties, the Trio Parties were compelled to seek financing elsewhere and to incur substantial legal, accounting and other fees and expenses in connection therewith.

### AS AND FOR A FIRST COUNTERCLAIM AND OFFSET
(<u>Against Merit, Bloch and Salazar for Breach of Fiduciary Duty</u>)

76. Counterclaimants repeat and reallege paragraphs 1 through 75 above as though fully set forth herein.

77. By reason of their positions of trust and confidence as financial advisors to defendants, and their superior knowledge upon which defendants relied, Merit, Bloch and Salazar owed fiduciary duties.

78. As set forth above, Merit, Bloch and Salazar, pursuant to a common plan and scheme to steal from defendants, engaged in misconduct in violation of their respective fiduciary duties.

79. The breach of fiduciary duties by Merit, Bloch and Salazar caused damage in an amount to be determined at trial and for which they should be held jointly and severally liable.

### AS AND FOR A SECOND COUNTERCLAIM AND OFFSET
(<u>Against Merit, Bloch and Salazar for Fraud</u>)

80. Counterclaimants repeat and reallege paragraphs 1 through 79 above as though fully set forth herein.

81. Merit's, Bloch's and Salazar's representations and assurances, including those regarding their ability to procure financing for the Trio Parties, were false when made and made intentionally to induce defendants.

82. The Trio Parties detrimentally relied upon Merit's representations and assurances regarding the Counterclaim Defendants' ability and actions to procure financing for the Trio Parties.

83. The Bridge Financing transaction and the documents relating thereto were designed to draw the Trio Parties into a stock scheme and, if that failed, to allow Merit to gain control over Trio Holdings for no consideration.

84. Merit's, Block's and Salazar's fraudulent conduct caused damages in an amount to be determined at trial and for which they should be held jointly and severally liable. In addition, the Court should declare the agreements between the parties to be void and rescinded.

AS AND FOR A THIRD COUNTERCLAIM AND OFFSET
(<u>Against Merit for Breach of Contract</u>)

85. Counterclaimants repeat and reallege paragraphs 1 through 84 above as though fully set forth herein.

86. The acts and omissions of Merit as set forth above constitute material breaches of the agreements made between Merit and the counterclaim plaintiffs, including breach of the duty of good faith and fair dealing.

87. Merit's breaches of the agreements made between Merit and the counterclaim plaintiffs caused damages to the Trio Parties in an amount to be determined at trial.

### AS AND FOR A FOURTH COUNTERCLAIM AND OFFSET
(<u>Against Merit for Unjust Enrichment</u>)

88.     Counterclaimants repeat and reallege paragraphs 1 through 87 above as though fully set forth herein.

89.     Through the acts, statements and omissions set forth above, Merit engaged in various misconduct and failed to provide value to the Trio Parties commensurate with the benefit afforded to it from its wrongful conduct.

90.     By this conduct, Merit has been unjustly enriched in an amount equal to at least the $110,000 fee and the value of the equity interest in Trio Holdings which were provided to Merit pursuant to the Bridge Financing transaction documents.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE AND FIFTH COUNTERCLAIM AND OFFSET
(<u>Against Merit, Bloch and Salazar for Violation of the Securities Laws</u>)

91.     Counterclaimants repeat and reallege paragraphs 1 through 90 above as though fully set forth herein.

92.     Merit and its principals Bloch and Salazar are not registered broker dealers or registered representatives.

93.     Merit, Bloch and Salazar violated the securities laws by the conduct set forth in the Complaint and above and in that they were, upon information and belief, regularly engaged in regulated financial services businesses without registration.

94.     Pursuant to Section 29(b) of the Exchange Act, the agreements between Merit and the Trio Parties are void due to these violations of the securities laws.

95.     The Counterclaim Defendants, accordingly, are entitled to rescission, i.e., cancellation, of the various agreements.

WHEREFORE, counterclaim plaintiffs respectfully demand judgment as follows:

A. Dismissing the Complaint in its entirety;

B. Awarding the counterclaim plaintiffs compensatory and punitive damages against the Counterclaim Defendants jointly and severally to be proven at trial, plus interest;

C. Declaring that the various agreements between the parties are void and rescinding the agreements; and

D. For such other and further relief as to the Court appears just and proper, including the costs and disbursements of this action, including a reasonable attorney's fee.

Dated: New York, New York
October 13, 2006

          FRYDMAN LLC

          By: __s/_____
          DAVID S. FRYDMAN (DF 8095)
          Counsel for Defendants Trio Industries
           Management, LLC, Trio Industries
           Holdings, LLC and Robert E. Gyemant
          18 East 48th Street – 10th Floor
          New York, New York 10017
          (212) 355-9100

To: Robert S. Wolf, Esq.
Gersten Savage LLP
Attorneys for Plaintiffs and Third-Party Defendants
600 Lexington Avenue
New York, NY 10022
(212) 752-9700

Evan R. Daniels
Defendant *Pro Se*
1420 Chaucer Drive
Frisco, TX 75035
(214) 762-0123

13